Joseph M. Coleman (SBN 04566100)
S. Kyle Woodard (SBN 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: kwoodard@krcl.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-80000-sgj11** |
| **CHRISTIAN CARE CENTERS, INC.** | § | |
| **AND CHRISTIAN CARE CENTERS** | § | **Chapter 11** |
| **FOUNDATION, INC.,** | § | |
| | § | **(Jointly Administered)** |
| Debtors. | § | |

| | | |
|---|---|---|
| **OFFICIAL COMMITTEE OF** | § | |
| **UNSECURED CREDITORS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. _____ |
| | § | |
| **UMB BANK, N.A., as Trustee,** | § | |
| | § | |
| Defendant. | § | |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
## ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND
## VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

The Official Unsecured Creditors' Committee (the **"Committee"** or **"Plaintiff"**) in the above-caption chapter 11 bankruptcy case of Christian Care Centers, Inc. (**"CCCI"**) and Christian Care Centers Foundations, Inc. (the **"Foundation"**) (collectively, the **"Debtors"**), files this *Original*

*Complaint to Determine Extent, Priority, and Validity of Liens and Objection to Claim of UMB Bank, N.A.* (the **"Complaint"**) and hereby alleges, upon its own knowledge or otherwise upon information and belief, as follows:

# I.
# NATURE OF ACTION

1. The Committee brings this action against Defendant UMB Bank, N.A., in its capacity as the "Secured Party" under the DIP Order (defined *infra*) (**"UMB"** or **"Defendant"**), pursuant to Rules 7001(2) and 7001(9) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), sections 105, 506, 544, and 550 of title 11 of the United States Code (the **"Bankruptcy Code"**), and the Declaratory Judgement Act (28 U.S.C. § 2201).

2. By this Complaint, the Committee seeks an order and judgment providing for, *inter alia*, the following relief:

   (a) A determination of the amount, extent, validity, priority and perfection of the prepetition liens and security interests asserted by UMB, pursuant to Bankruptcy Rules 7001(2) and 7001(9) and the Declaratory Judgment Act;

   (b) Avoidance of UMB's prepetition liens with respect to certain assets of the Debtors and recovery of any amounts received by UMB on account of such avoided liens, pursuant to applicable law, including, without limitation, sections 544, 549, and 550 of the Bankruptcy Code; and

   (c) Disallowance of UMB's secured claim to the extent that such claim exceeds the value of UMB's valid and properly perfected prepetition liens, pursuant to section 506 of the Bankruptcy Code.

# II.
# JURISDICTION & VENUE

3. The United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the **"Court"**), has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

4. Venue is proper in this district under 28 U.S.C. § 1409(a).

5.      The Committee has filed its *Motion for Standing to Challenge Prepetition Claims and Liens* in the Debtors' bankruptcy case, in accordance with the DIP Order, requesting standing to bring the causes of action asserted herein against UMB.

6.      The Committee consents to the Court's entry of a final order or judgment in this proceeding.

### III.
### PARTIES

7.      Plaintiff is the duly-appointed Committee of unsecured creditors in the Debtors' above-captioned bankruptcy cases.  The U.S. Trustee for the Northern District of Texas appointed the Committee on June 3, 2022 [Dkt. Nos. 98 and 114],[1] under section 1102 of the Bankruptcy Code.

8.      Defendant, UMB, is a national banking association with headquarters at 1010 Grand Boulevard, Kansas City, Missouri 64106.  UMB is the Defendant in this proceeding in its capacity as the Secured Party under the DIP Order.  UMB may be served with process through its registered agent(s) as follows:

> United Agent Group Inc.
> 5444 Westheimer #1000
> Houston, TX 77056
>
> Mr. John Pauls
> Senior Vice President
> P.O. Box 419226
> Kansas City, MO 64141-6226

### IV.
### STATEMENT OF FACTS

**A.    DEBTORS' BANKRUPTCY CASES**

9.      On May 23, 2022 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.  The Debtors are operating as debtors-in-

---

[1] All docket references are to Case No. 22-80000-sgj11 unless otherwise noted.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 3 OF 34
9512139 v1 (73669.00002.000)

possession under sections 1107 and 1108 of the Bankruptcy Code. The U.S. Trustee appointed the Committee on June 3, 2022, under section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

10. The events leading to the Debtors' bankruptcy filing are detailed in the *Declaration of Mark Shapiro, Debtors' Chief Restructuring Officer, in Support of the Chapter 11 Petitions and First Day Pleadings* (the **"First Day Declaration"**) filed by the Debtors on the Petition Date. The First Day Declaration is incorporated by reference into this Complaint for all purposes.

11. On June 6, 2022, each of the Debtors filed their bankruptcy schedules A/B, D, E/F, and G. CCCI amended its Bankruptcy Schedules on July 13, 2022 (as amended, the **"Bankruptcy Schedules"**). The Bankruptcy Schedules are incorporated by reference into this Complaint for all purposes.

12. On June 23, 2022, the Court entered its *Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Debtors in Possession to Use Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. No. 185] (the **"DIP Order"**). The DIP Order is incorporated by reference into this Complaint for all purposes. All capitalized terms not defined in this Complaint have the meanings provided in the DIP Order, unless otherwise noted herein.

13. On July 21, 2022, the Court entered its *Order Authorizing the Sale of Assets of Debtors, Approving Assumption and Assignment of Executory Contracts, and Granting Other Related Relief* [Dkt. No. 264] (the **"Sale Order"**) authorizing the Debtors to sell substantially all of their assets under section 363 of the Bankruptcy Code (the **"Sale"**) to North Texas Benevolent Holdings, LLC on the terms of the Asset Purchase Agreement attached to the Debtors' Sale Motion [Dkt. No. 31-1] (the **"APA"**). The Sale Order and APA are incorporated by reference into this Complaint for all purposes.

14. The Sale is currently expected to close on or about November 1, 2022.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 4 OF 34
9512139 v1 (73669.00002.000)

## B. DEBTORS' HISTORY AND OPERATIONS[2]

15. The Debtors are nonprofit corporations incorporated under the laws of the State of Texas. CCCI was formed in 1947, and the Foundation was formed in 1994.

16. According to the First Day Declaration, CCCI owns and operates three senior living campuses in the Dallas / Fort Worth Metroplex, which are located at 560 Prestige Circle, Allen, Texas; 5100 Randol Mill Road, Fort Worth, Texas; and 900 Wiggins Parkway, Mesquite, Texas (each a **"Campus,"** and collectively, the **"Campuses"**).

17. Eighty units at CCCI's Mesquite Campus consist of a continuing care retirement community known as **"Greenway Village."** Residents of Greenway Village must pay an entrance fee for their unit (an **"Entrance Fee"**) and monthly service fees, pursuant to the *Greenway Village Independent Living Resident Agreement* (a **"Resident Agreement"**) that each resident executes with CCCI. In exchange, residents are entitled to occupy the unit for their lifetime, unless sooner terminated in accordance with the Resident Agreement.

18. Ninety percent (90%) of a resident's Entrance Fee is refundable (an **"Entrance Fee Refund"**) upon termination of his or her Resident Agreement.

19. As of the Petition Date, the Debtors' total contingent obligations for Entrance Fee Refunds were approximately $6.868 million.

20. According to the First Day Declaration, the Debtors determined during the COVID-19 pandemic that it was important to ensure it had sufficient cash on hand to satisfy Entrance Fee Refund obligations in accordance with the Resident Agreements. On information and belief, the Debtors began segregating funds to cover contingent Entrance Fee Refunds around April, 2021.

---

[2] The statements made in this Section IV.B of this Complaint are based on information contained in pleadings, orders, and documents filed of record in the Debtors' bankruptcy cases, including, without limitation, (i) the Debtors' stipulations in the DIP Order, (ii) the First Day Declaration, (iii) the Sale Order, and/or (iv) the Debtors' Bankruptcy Schedules. The Committee does not have personal knowledge of the information contained in such pleadings, orders, or documents, and the statements made in this Section IV.B shall not in any way constitute admissions by the Committee.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.      PAGE 5 OF 34

9512139 v1 (73669.00002.000)

### C. PREPETITION CLAIMS AND LIENS ASSERTED BY UMB[3]

21.     The Debtors stipulate in the DIP Order that UMB holds a prepetition secured claim against the Debtors of more than $53 million pursuant to the terms of the Bond Documents, as more fully described in the DIP Order and First Day Declaration.  The Debtors' Bankruptcy Schedules (Schedule D) reflect a prepetition secured claim held by UMB in the amount of $53,912,573.66 (the **"Prepetition Claim"**).[4]

22.     On information and belief, UMB asserts that its Prepetition Claim is secured by valid and perfected liens and security interests granted by the Debtors (the **"Prepetition Liens"**) pursuant to the terms of (i) that certain *Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement* dated as of September 15, 1996, and effective as of December 1, 2005, between the Debtors and Charitable Properties, Inc.,[5] as members of an obligated group formed thereunder, and JPMorgan Chase Bank, N.A., as original master trustee (as amended and/or supplemented, the **"Master Indenture"**), and (ii) that certain *Deed of Trust and Security Agreement* dated September 1, 2014, between CCCI, as grantor, and The Bank of New York Mellon Trust Company, N.A., as Master Trustee (as amended and/or supplemented, the **"Deed of Trust"**).

23.     The Debtors stipulate in the DIP Order that UMB is the successor master trustee under the Master Indenture (the **"Master Trustee"**).

---

[3] The statements made in this Section IV.C of this Complaint are based on information contained in pleadings, orders, and documents filed of record in the Debtors' bankruptcy cases, including, without limitation, (i) the Debtors' stipulations in the DIP Order, (ii) the First Day Declaration, (iii) the Sale Order, and/or (iv) the Debtors' Bankruptcy Schedules.  The Committee does not have personal knowledge of the information contained in such pleadings, orders, or documents, and the statements made in this Section IV.C shall not in any way constitute admissions by the Committee.

[4] UMB's claim under the Bond Documents is defined as the "Bond Claim" in the DIP Order and First Day Declaration.

[5] According to the First Day Declaration, Charitable Properties, Inc. ("**CPI**") merged into CCCI and assigned all of its rights, title, and interest in property to CCCI effective as of January 1, 2020, pursuant to that certain *Agreement and Plan of Merger* dated effective January 1, 2020, between CCCI and CPI, and that certain *Assignment of Property*, dated as of January 1, 2020, by CPI in favor of CCCI.  *See First Day Declaration*, p. 12, n. 1.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 6 OF 34
9512139 v1 (73669.00002.000)

24.     On information and belief, UMB asserts that its Prepetition Liens attach to and are perfected in all or substantially all of the Debtors' assets (the **"Prepetition Collateral"**).[6] The Debtors' Bankruptcy Schedules (Schedule D) state that UMB's Prepetition Claim is secured by "all [of the Debtors'] assets as further described in the UCC filings."

25.     The Debtors stipulate in the DIP Order that UMB's Prepetition Liens attach to and are perfected in "(i) all Gross Revenues (as defined in the Master Indenture) of the Debtors, and (ii) the right, title and interest of the Debtors in the land and facilities comprising the Campuses." *DIP Order*, p. 6 ¶ 11.

26.     On information and belief, UMB asserts that its Prepetition Liens are perfected by way of one or more of the following UCC-1 financing statements filed with the Texas Secretary of State:

(a)     UCC-1 filed on June 23, 2000 by Chase Bank of Texas against CCCI [Filing #00-528215] (the **"First UCC"**);

(b)     UCC-1 filed on June 23, 2000 by Chase Bank of Texas against CCCI [Filing #00-526094] (the **"Second UCC"**);

(c)     UCC-1 filed on December 9, 2005 by JPMorgan Chase Bank against both CCCI [Filing #05-0037658781] and against the Foundation [Filing #05-0037658780] (the **"Third UCC"**); and

(d)     UCC-1 filed on March 16, 2020 by UMB against both CCCI [Filing #20-0010376564] and against the Foundation [Filing #20-0010376685] (the **"Fourth UCC"**).

The First UCC, Second UCC, Third UCC, and Fourth UCC are attached hereto as **Exhibits A-1, A-2, A-3, and A-4**, respectively (collectively, the **"UCCs"** or **"Financing Statements"**), and are incorporated herein by reference for all purposes.

27.     The First UCC and Second UCC are filed only against CCCI.

---

[6] As used herein, **"Prepetition Collateral"** refers to assets of the Debtors in which UMB's Prepetition Liens were valid and properly perfected as of the Petition Date.  Assets in which the Prepetition Liens were not properly perfected as of the Petition Date are not part of UMB's Prepetition Collateral.

28.     The Third UCC and Fourth UCC are filed separately against both CCCI and the Foundation.

29.     On information and belief, UMB was not in possession or control of any Prepetition Collateral as of the Petition Date.

## D.     DEBTORS' ASSETS[7]

30.     According to the Debtors' Bankruptcy Schedules, the Debtors assert that their assets include, but are not limited to, the following:

### i.     *Cash and Investments*

(a)     As of the Petition Date, CCCI held cash on hand of $3,950.00.

(b)     As of the Petition Date, CCCI held numerous bank accounts with balances in the total aggregate amount of $6,875,830.11.  Of this amount, (i) $6,316,170.00 was held in account no. xxx1904 with Veritex Bank (the **"Greenway Account"**); (ii) $226,427.24 was held in account no. xxx910 with UMB; and (iii) a combined $333,232.87 was held among all of CCCI's other accounts with Veritex Bank and other banks (collectively, the **"Other Bank Accounts"**).

(c)     As of the Petition Date, CCCI held an investment in Ziegler Link Age worth $368,272.00 (the **"Zeigler Fund"**).

(d)     As of the Petition Date, the Foundation held (i) a cash account with U.S. Capital Advisors, account no. xxx0091, with a balance of $63.00 and (ii) a brokerage account with investments worth $324,438.84 (the **"Brokerage Account"**).  These are the only two assets listed on the Foundation's Schedule A/B.

---

[7] The statements made in this Section IV.D of this Complaint are based on information contained in pleadings, orders, and documents filed of record in the Debtors' bankruptcy cases, including, without limitation, (i) the Debtors' stipulations in the DIP Order, (ii) the First Day Declaration, (iii) the Sale Order, and/or (iv) the Debtors' Bankruptcy Schedules.  The Committee does not have personal knowledge of the information contained in such pleadings, orders, or documents, and the statements made in this Section IV.D shall not in any way constitute admissions by the Committee.

### ii. Employee Retention Credit

(e)     On information and belief, the Debtors are seeking to recover an employee retention credit under section 2301 of the CARES Act for qualified wages paid between March 27, 2020 and December 31, 2021 (the **"ERC"**).

(f)     On information and belief, the Debtors applied for an ERC in the amount of approximately $2.3 million.

(g)     The Debtors applied for the ERC prior to the Petition Date, but they did not receive notice that any portion of their application had been approved, or that they would actually receive any ERC amounts, until June 27, 2022.

(h)     The ERC is not listed on the Debtors' Schedule A/B.

(i)     After the Petition Date, on or about June 27, 2022, the Debtors received notice that their ERC had been approved for one fiscal quarter of 2020, and that they would receive an ERC payment for that quarter in the amount of $108,693.27.

(j)     The Debtors still do not know whether their ERC will be approved for any of the other fiscal quarters for which they applied.

### iii. Accounts Receivable

(k)     As of the Petition Date, the value of CCCI's accounts receivables totaled approximately $1,633,030.14, of which $1,343,521.96 were less than 90 days old and $289,508.18 were more than 90 days old.

### iv. Vehicles

(l)     As of the Petition Date, CCCI owned eighteen (18) vehicles worth a combined total of at least $259,735.00 (collectively, the **"Vehicles"**).

(m)     On information and belief, each of the Vehicles is worth more than the value listed in the Bankruptcy Schedules.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY
OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 9 OF 34
9512139 v1 (73669.00002.000)

### v. *Mineral Interests*

(n)    As of the Petition Date, the Debtors owned certain oil and gas mineral interests in Tarrant County, Texas (collectively, the **"Tarrant County Minerals"**).

(o)    The Debtors, as lessors, are parties to one or more oil and gas mineral leases for the Tarrant County Minerals (the **"Tarrant Mineral Leases"**).

(p)    The Debtors received royalty payments under the Tarrant Mineral Leases of approximately $4,000 per month, on average, during the twelve months preceding the Petition Date.

(q)    The Tarrant Mineral Leases are "Permitted Encumbrances" under the Master Indenture.

(r)    All Permitted Encumbrances under the Master Indenture are Permitted Encumbrances under the Deed of Trust.

(s)    The Debtors' rights and interests under the Tarrant Mineral Leases, including the right to receive royalty payments, are superior to UMB's Prepetition Liens.

(t)    To the extent the Debtors own any mineral interests in Grayson County, Texas, such mineral interests are also Permitted Encumbrances under the Master Indenture and the Deed of Trust.

(u)    In addition to the Tarrant County Minerals, CCCI also owned oil and gas mineral interests in the following counties or parishes as of the Petition Date (collectively, the **"Other Minerals"**):

- Eastland County, TX
- Howard County, TX
- Young County, TX
- Jack County, TX
- Borden County, TX
- Montague County, TX
- Borden County, TX
- Carson County, TX

- Fisher County, TX
- Loving County, TX
- Beauregard Parish, LA
- Stark County, ND
- Pottawattomie County, OK
- Shackelford County, TX

(v)     On information and belief, after due inquiry, neither the Master Indenture, nor the Deed of Trust, nor any other evidence of UMB's Prepetition Liens against the Other Minerals are recorded in the real property records for any of the counties in which the Other Minerals are located.

(w)     The Tarrant County Minerals, the Other Minerals, the Debtors' rights and interests under the Tarrant Mineral Leases, and any other mineral rights or interests that the Debtors may possess are hereinafter referenced collectively as the **"Mineral Interests**."

### vi.     Other Assets

(x)     As of the Petition Date, CCCI's assets also included the following intangible assets (collectively, the **"Other Intangible Assets"**):

  i.     surety bond deposits with Hartford Insurance in the amount of $33,000.00;

  ii.     prepayments to Alert Media (data processing) and Ohio Indemnity Company in the total amount of $41,709.51;

  iii.     resident buy-in notes receivable of $74,400; and

  iv.     interests in single premium immediate annuities with Integrity Life Insurance and Symetra Life Insurance worth a combined total of $118,896.06.

(y)     As of the Petition Date, CCCI's assets also included the following tangible assets (collectively, the **"Other Tangible Assets"**):

  i.     inventory worth $63,514;

  ii.     office furniture, computer equipment, computer software, and office equipment with a combined net book value of $421,783.74 (collectively, the **"Office Equipment"**); and

iii.   building equipment with a net book value of $2,736,455.26 (the "**Building Equipment**").

(z)   The Bankruptcy Schedules reflect unknown values for the Debtors' interests in the Office Equipment and Building Equipment.

E.   **EFFECT OF DIP ORDER ON PREPETITION LIENS; ADEQUATE PROTECTION**

31.   The DIP Order provides certain adequate protection for UMB's Prepetition Liens under sections 361, 363, and 552(b) of the Bankruptcy Code, as further described in paragraph 22 of the DIP Order, including, *inter alia*, (i) replacement liens on the Post-Petition Collateral to the same extent, priority and validity that existed as of the Petition Date (the "**Rollover Liens**") and (ii) supplemental liens on all property of the Debtors' bankruptcy estates and all proceeds thereof, except for avoidance actions under Chapter 5 of the Bankruptcy Code (the "**Supplemental Liens**" and together with the Rollover Liens, the "**Adequate Protection Liens**").

32.   The Adequate Protection Liens are limited to the extent of any diminution in the value of the Prepetition Collateral, including based upon priming by the DIP Lender (as defined in the DIP Order, "**Diminution**"). *DIP Order*, p. 19 ¶ 22.

33.   The Adequate Protection Liens do not arise without Diminution.

34.   A showing of Diminution requires a determination of the property comprising UMB's Prepetition Collateral as of the Petition Date, which in turn requires a determination as to whether UMB's Prepetition Liens were perfected in the property as of the Petition Date.

35.   Property in which UMB's Prepetition Liens were not valid and properly perfected as of the Petition Date ("**Unencumbered Property**") is not part of the Prepetition Collateral.

36.   Unencumbered Property can never become encumbered by the Rollover Liens, regardless of any showing of Diminution, because the Rollover Liens are limited to the extent of the Prepetition Collateral.

**ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY**
**OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.**

**PAGE 12 OF 34**
9512139 v1 (73669.00002.000)

37.    Unencumbered Property can only become subject to the Supplemental Liens to the extent of Diminution, if any, in the value of the Prepetition Collateral.

38.    Priming by the DIP Liens does not result in any Diminution if enough Unencumbered Property exists to fully secure the DIP Liens.

## F.    COMMITTEE'S STANDING AND AUTHORITY TO FILE SUIT

39.    The DIP Order provides for the Committee's right to (i) challenge UMB's Prepetition Claim, Prepetition Liens, and Prepetition Collateral, and to (ii) assert claims and causes of action against UMB and/or holders of the Bonds on behalf of the Debtors' bankruptcy estates (as defined in the DIP Order, a "**Challenge**"). *DIP Order*, p. 26-28, ¶ 36.  Paragraph 36 of the DIP Order states in relevant part as follows:

> Notwithstanding (i) the foregoing paragraph and (ii) any waivers, stipulations, admissions, and/or agreements by the Debtors, any party in interest (including the Committee, but excluding the Debtors) as to claims against the Secured Party may file an adversary proceeding or contested matter (a "Challenge") (i) challenging the amount, validity, extent, enforceability, perfection or priority of the Bond Claim or the Pre-Petition Liens or Pre-Petition Collateral (including Cash Collateral) in respect thereof, or any stipulations made by the Debtors in this Final Order, or (ii) otherwise asserting any claims or causes of action against the Secured Party and/or holders of the Bonds on behalf of the Debtors' estates, so long as any Challenge is made on or before the date that is sixty (60) days, or in the case of the Committee only, ninety (90) days, after the Petition Date. … Nothing in this Final Order shall be deemed to confer standing on any Committee or any other non-Debtor party-in-interest to commence a Challenge, and any Committee or such other non-Debtor party in interest shall be required to move for standing and satisfy the applicable standard for obtaining standing to pursue estate causes of action; provided that such party may file its motion for standing simultaneously with its commencement of a Challenge.

40.    In accordance with the DIP Order, the Committee filed its *Motion for Standing to Challenge Prepetition Claims and Liens* [Dkt. No. 297] on August 19, 2022, prior to filing this Complaint, requesting standing to Challenge UMB's Prepetition Claim and the Prepetition Liens and Prepetition Collateral asserted by UMB in respect thereof.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY
OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 13 OF 34
9512139 v1 (73669.00002.000)

G.    GOVERNING LAW

41.    The Debtors are located in Texas and formed under the laws of the State of Texas.

42.    Section 11.02 of the Master Indenture states as follows: "This Indenture and the Obligations shall be deemed to be contracts made under the laws of the State of Texas, and for all purposes shall be construed in accordance with the laws of said State applicable to contracts made and to be performed in said State."

43.    Therefore, the extent, validity, perfection, and priority of UMB's Prepetition Liens against the Prepetition Collateral are governed by Texas law and the Texas Business and Commerce Code (the **"TBCC"**).  Texas has adopted the Uniform Commercial Code and enacted the same as Title 1 of the TBCC.

V.
**INSUFFICIENCY OF FINANCING STATEMENTS**

*i.    The First UCC Applies Only to Certain Property that is Both Owned by CCCI and Located on the Mesquite Campus*

44.    The First UCC is filed only against CCCI; it is not filed against the Foundation.

45.    Therefore, the First UCC does not perfect a lien or security interest in any assets that are owned by the Foundation.

46.    The First UCC describes the collateral covered thereunder as follows:

> All of Debtor's now owned or existing and hereafter acquired or arising accounts, machinery, equipment, fixtures, inventory, goods, chattel paper, investment property, general intangibles, instruments and documents, together with all accessions to, substitutions for and replacements, products and proceeds of all of the foregoing, as more particularly described on Exhibit B attached hereto and by this reference incorporated herein, located on the real estate described on Exhibit A attached hereto.

**Ex. A-1** (First UCC).

47.     The real estate described on Exhibit A to the First UCC is CCCI's Campus in Mesquite, Texas (the **"Mesquite Campus"**).  Therefore, the First UCC does not perfect a lien or security interest in any assets that are not located on the Mesquite Campus.

48.     The phrase "as more particularly described on Exhibit B" limits the collateral covered by the First UCC to the items described on Exhibit B attached thereto.  Therefore, the First UCC does not perfect a lien or security interest in any assets that are not described on Exhibit B thereto.

49.     In summary, the First UCC cannot perfect UMB's asserted Prepetition Liens in any assets that are not (a) owned by CCCI, (b) located on the Mesquite Campus, <u>and</u> (c) described on Exhibit B to the First UCC.

### ii.     The Second UCC Does Not Perfect UMB's Prepetition Liens in Any Collateral

50.     The Second UCC is filed only against CCCI; it is not filed against the Foundation.

51.     Therefore, the Second UCC does not perfect a lien or security interest in any assets that are owned by the Foundation.

52.     The Second UCC describes the collateral covered thereunder as follows:

> The Gross Revenues (as defined in the Master Trust Indenture dated as of September 15, 1996 (the "Master Indenture") as supplemented by Supplemental Indenture Number 2 between Secured Party and Debtor) of the Obligated Group Members (as defined in the Master Indenture), all moneys and securities from time to time held by the Secured Party under the terms of the Master Indenture and any and all other real or personal property of every name and nature from time to time hereafter by delivery or by writing of any kind conveyed, mortgaged, pledged, assigned or transferred, as and for additional security hereunder by the Obligated Group Members, or by anyone on their behalf or with their written consent, to the Secured Party.

**<u>Ex. A-2</u>** (Second UCC).

53.     The Second UCC relies on reference to two extrinsic documents—*i.e.*, (i) the Master Trust Indenture dated as of September 15, 1996 and (ii) Supplemental Indenture Number 2—in order to describe the collateral covered thereunder.

54.     Neither of the referenced extrinsic documents is attached to the Second UCC or otherwise filed with the Texas Secretary of State.

55.     The Second UCC also fails to inform searching parties where the extrinsic documents referenced therein are located or how the documents can be viewed.

56.     Without reviewing these extrinsic documents, search parties are unable to ascertain the collateral to which the Second UCC applies.

57.     Among other things, searching parties are unable to ascertain the definitions of "Gross Revenues" or "Obligated Group Members," nor can they ascertain the property given as collateral under the Master Indenture, as supplemented.

58.     Therefore, the Second UCC fails to sufficiently describe any collateral, and, consequently, the Second UCC does not perfect UMB's Prepetition Liens in any of the alleged Prepetition Collateral.

### iii.     The Third UCC Does Not Perfect UMB's Prepetition Liens in Any Collateral

59.     The Third UCC is separately filed against both CCCI and the Foundation.

60.     The Third UCC describes the collateral covered thereunder as follows:

> The Trust Estate as described in the Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement, dated as of September 15, 1996 and effective as of December 1, 2005, as supplemented, between the Secured Party and Debtor.

**Ex. A-3** (Third UCC).

61.     The Third UCC relies on reference to extrinsic documents—the Master Indenture and all supplements thereto—in order to describe the collateral covered thereunder.

62.     Neither the Master Indenture nor any supplements thereto are attached to the Third UCC or otherwise filed with the Texas Secretary of State.

63.     The Third UCC also fails to inform searching parties where the Master Indenture or supplements thereto are located or how the documents can be reviewed.

64.     Without reviewing the Master Indenture and supplements thereto, searching parties are unable to ascertain to the collateral to which the Third UCC applies.

65.     Therefore, the Third UCC fails to sufficiently describe any collateral, and, consequently, the Third UCC does not perfect UMB's Prepetition Liens in any of the alleged Prepetition Collateral.

### iv.     The Fourth UCC Applies Only to Debtors' Rights to Receive Medicare and Medicaid Payments

66.     The Fourth UCC is separately filed against both CCCI and the Foundation.

67.     The Fourth UCC describes the collateral covered thereunder as follows:

> All right, title and interest of the Debtor in and to its rights to receive Medicaid and Medicare payments, whether in the form of accounts, accounts receivable, general intangibles, contract rights, chattel paper, instruments, investment property or other rights, and the proceeds thereof, whether not existing or hereafter coming into existence and whether now owned or held, or hereafter acquired.

**Ex. A-4** (Fourth UCC).

68.     The collateral described in the Fourth UCC is limited to the Debtors' rights to receive Medicaid and Medicare payments and the proceeds thereof.

69.     Therefore, the Fourth UCC cannot perfect UMB's asserted Prepetition Liens in any of the alleged Prepetition Collateral except the Debtors' right to receive payments from Medicare or Medicaid.

## VI.
## CAUSES OF ACTION

### COUNT I
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Greenway Account)

70.     The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

71.     CCCI is the owner of the Greenway Account.

72.     CCCI opened the Greenway Account with Veritex Bank on or about May 4, 2022.

73.     The Greenway Account was funded on or about May 4, 2022, with a $6.3 million transfer of cash from the Foundation's Brokerage Account with US Capital Advisors.

*i.* **UMB Does Not Have Control of the Greenway Account**

74.     The Greenway Account is a "deposit account" within the meaning of section 9.102(a)(29) of the TBCC.

75.     UMB is not the bank with which the Greenway Account is maintained.

76.     UMB is not Veritex Bank's customer with respect to the Greenway Account.

77.     As of the Petition Date, there was no agreement in effect between CCCI, UMB, and Veritex Bank requiring Veritex Bank to comply with UMB's instructions as to the disposition of funds in the Greenway Account without further consent by the debtor (such agreement, a **"Deposit Account Control Agreement"** or **"DACA"**).

78.     There has never been a DACA in place for the Greenway Account.

79.     UMB has never had "control" of the Greenway Account within the meaning of section 9.104 of the TBCC.

80.     Therefore, UMB's Prepetition Liens have never been perfected in the Greenway Account.

*ii.* **UMB Waived its Right to Control of the Greenway Account**

81.     UMB agreed to take assignment of the Bond Documents, and accepted its role as Master Trustee and Bond Trustee thereunder, without DACAs for any of the Debtors' bank accounts or any requirement that the Debtors move its bank accounts to UMB.

82.     UMB then agreed to enter into two forbearance agreements with the Debtors without DACAs for any of the Debtors' bank accounts or any requirement that the Debtors move its bank accounts to UMB.

83.     Therefore, UMB has waived its right to control of the Greenway Account.

### iii.     The Funds in the Greenway Account are Not Traceable as Proceeds of UMB's Prepetition Collateral

84.     The Greenway Account was funded on or about May 4, 2022, with a cash transfer of approximately $6.3 million from the Foundation's Brokerage Account with U.S. Capital Advisors (the **"May 4th Transfer"**).

85.     With respect to the Brokerage Account, UMB's Prepetition Liens were not perfected by filing or by control[8] at the time of the May 4th Transfer for the reasons set forth in Count IV *infra*.

86.     Therefore, the fact that the funds in the Greenway Account came from the Brokerage Account is insufficient to trace the funds as identifiable proceeds of UMB's Prepetition Collateral.

87.     In order to identify the funds in the Greenway Account as proceeds of its Prepetition Collateral, UMB must trace the funds back to origination as either (a) proceeds of Prepetition Collateral located on the Mesquite Campus covered under the First UCC or (b) proceeds of Medicare or Medicaid payments covered under the Fourth UCC.

88.     According to the First Day Declaration, the Debtors determined during the COVID-19 pandemic that it was important to ensure it had sufficient cash on hand to satisfy Entrance Fee Refund obligations that might become owed to Greenway Village residents in accordance with the Resident Agreements.

89.     On information and belief, the Debtors began segregating funds to cover contingent Entrance Fee Refunds during or around April, 2021.

90.     The Debtors initially segregated the funds into the Foundation's Brokerage Account. Since the May 4th Transfer, the funds have been segregated in the Greenway Account at Veritex Bank.

---

[8] As used herein, the phrase "perfected by filing" means perfection of a lien or security interest by way of a properly filed UCC-1 financing statement, and the phrase "perfected by control" means perfection of a lien or security interest by way of control of the property in question.

91.     Even after this segregation, however, the Debtors did not deposit residents' Entrance Fees directly into the Brokerage Account. The Debtors continued to deposit Entrance Fees into their general revenue and/or operating bank accounts, which were commingled with other funds from the Debtors' operations, and from those accounts the Debtors would eventually move an appropriate amount of funds into the Brokerage Account.

92.     The segregation of funds for Entrance Fee Refund liabilities is not an actual segregation of the Entrance Fees themselves immediately upon receipt, but rather is a segregation of funds in an amount equal to outstanding Entrance Fee liabilities (90% of the Entrance Fees received) after the funds have been deposited and commingled in the Debtors' operating and revenue accounts. Prior to the Debtors' beginning this segregation, all portions of the Entrance Fees remained commingled indefinitely.

93.     All of the funds in the Greenway Account were commingled to varying degrees before being deposited into the Brokerage Account.

94.     Moreover, on information and belief, substantially all of the funds held in the Greenway Account as of the Petition Date are attributable to Entrance Fees that were paid before the Debtors first began segregating funds for Entrance Fee Refunds, and thus such funds were extensively commingled—potentially for years—in the Debtors' operating and revenue accounts prior to the segregation of accounts.

95.     Therefore, the funds in the Greenway Account are not traceable as proceeds of the Entrance Fees or any other Prepetition Collateral.

96.     On information and belief, the Debtors do not maintain separate bank accounts for each of the Campuses, and thus the funds in the Greenway Account are not even traceable to a specific Campus.

**ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.**     **PAGE 20 OF 34**

9512139 v1 (73669.00002.000)

97. The Committee requests that the Court enter judgment (a) that the Greenway Account and the funds of approximately $6.3 million held therein are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens on the Greenway Account pursuant to section 544 of the Bankruptcy Code.

## COUNT II
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Other Bank Accounts)

98. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

99. The Other Bank Accounts are not maintained with UMB.

100. UMB did not have a DACA for any of the Other Bank Accounts as of the Petition Date, nor does UMB currently have a DACA for any of the accounts.

101. With respect to each of the Other Bank Accounts, UMB was not a customer of the bank at which the account is held as of the Petition Date, nor is it currently a customer with respect to any of the accounts.

102. Therefore, as of the Petition Date, UMB's Prepetition Liens were not perfected in any of the Other Bank Accounts because UMB did not have control over the accounts.

103. UMB cannot trace the funds in the Other Bank Accounts as proceeds of its Prepetition Collateral because the funds were, and are, extensively commingled.

104. The Committee requests that the Court enter judgment (a) that the Other Bank Accounts and the funds held therein are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Other Bank Accounts pursuant to section 544 of the Bankruptcy Code.

## COUNT III
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Cash)

105.     The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

106.     UMB's Prepetition Liens were not perfected in the Debtors' cash on hand as of the Petition Date because UMB did not have possession of the cash.

107.     The Committee requests that the Court enter judgment (a) that the Debtors' cash on hand as of the Petition Date is not encumbered by UMB's Prepetition Liens and is not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Debtors' cash pursuant to section 544 of the Bankruptcy Code.

## COUNT IV
### (Objection to Extent, Validity, and Priority of Prepetition Liens on the Foundation's Brokerage Account)

108.     The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

109.     The Brokerage Account is owned by the Foundation and maintained with U.S. Capital Advisors.

110.     The First UCC does not perfect any liens or security interests in the Brokerage Account because the First UCC is not filed against the Foundation, and because the Brokerage Account is not located on the Mesquite Campus or described on Exhibit B to the First UCC.

111.     The Second and Third UCCs do not perfect any liens or security interests in the Brokerage Account because neither UCC sufficiently identifies the Brokerage Account as UMB's collateral.

112. The Fourth UCC does not perfect any liens or security interests in the Brokerage Account because the collateral covered by the Fourth UCC is limited to the Debtors' rights to payment from Medicare and Medicaid.

113. Therefore, UMB's Prepetition Liens have never been perfected in the Brokerage Account by way of the Financing Statements.

114. To the extent the Brokerage Account is a deposit account, UMB lacked control over the account because (a) the Brokerage Account was not, and is not, maintained with UMB; (b) UMB did not, and does not, have a DACA for the Brokerage Account; and (c) UMB was not, and is not, a customer of U.S. Capital Advisors with respect to the Brokerage Account.

115. To the extent the Brokerage Account is investment property, UMB lacked control over the account as of the Petition Date for, pending discovery, at least the following reasons:

(a) The securities in the Brokerage Account had not been delivered to UMB within the meaning of section 8.301 of the TBCC;

(b) The Foundation, not UMB, was the record owner (*i.e.*, the entitlement holder) of all securities held in the Brokerage Account;

(c) U.S. Capital Advisors had not agreed to comply with orders from UMB without further consent of the Debtors, *i.e.*, there was not DACA or similar agreement in place for the Brokerage Account; and

(d) The Foundation never acknowledged to U.S. Capital Advisors that it held the Brokerage Account or the securities therein on behalf of UMB or for UMB's benefit.

116. Therefore, UMB's Prepetition Liens have never been perfected by control in the Brokerage Account.

117. As further detailed in Count I *supra*,[9] all of the funds in the Brokerage Account were extensively commingled in the Debtors' bank accounts before being deposited into the Brokerage Account.

---

[9] *See* Count I *supra*, Subsection (iii) (regarding UMB's inability to trace the funds in the Greenway Account).

118. On information and belief, all of the investments held in the Brokerage Account as of the Petition Date were acquired by the Debtors prior to the time the Debtors began segregating funds for Entrance Fee Refund liabilities.

119. Therefore, the funds and investments in the Brokerage Account are not traceable as identifiable proceeds of UMB's Prepetition Collateral.

120. The Committee requests that the Court enter judgment that (a) the Foundation's Brokerage Account is not encumbered by UMB's Prepetition Liens and is not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Brokerage Account pursuant to section 544 of the Bankruptcy Code.

## COUNT V
### (Objection to Extent, Validity, and Priority of Prepetition Liens on the Zeigler Fund)

121. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

122. The First UCC does not perfect any liens or security interests in the Zeigler Fund because the Zeigler Fund is not located on the Mesquite Campus or described on Exhibit B to the First UCC.

123. The Second and Third UCCs do not perfect any liens or security interests in the Zeigler Fund because neither UCC sufficiently identifies the Zeigler Fund as UMB's collateral.

124. The Fourth UCC does not perfect any liens or security interests in the Zeigler Fund because the collateral covered by the Fourth UCC is limited to the Debtors' rights to payment from Medicare and Medicaid.

125. Therefore, UMB's Prepetition Liens have never been perfected in the Zeigler Fund by way of the Financing Statements.

126. On information and belief, UMB lacks control over the Zeigler Fund for, pending discovery, at least the following reasons:

(a) The Zeigler Fund has not been delivered to UMB within the meaning of section 8.301 of the TBCC;

(b) CCCI, not UMB, is the record owner (*i.e.*, the entitlement holder) of the Zeigler Fund;

(c) UMB does not have any ability to control the Zeigler Fund without further consent of the Debtors, , *i.e.*, there is not DACA or similar agreement in place Zeigler Fund; and

(d) CCCI has not acknowledged that it holds the Zeigler Fund on behalf of UMB or for UMB's benefit.

127. Therefore, UMB's Prepetition Liens have never been perfected by control in the Brokerage Account.

128. The Zeigler Fund is not traceable as proceeds of UMB's Prepetition Collateral because the amounts invested therein were commingled within the Debtors' operating and/or revenue accounts before being invested.

129. The Committee requests that the Court enter judgment that (a) the Zeigler Fund is not encumbered by UMB's Prepetition Liens and is not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Zeigler Fund pursuant to section 544 of the Bankruptcy Code.

### <u>COUNT VI</u>
**(Objection to Extent, Validity, and Priority of Prepetition Liens on Employee Retention Credit)**

130. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

131. The First UCC does not perfect any liens or security interests in the ERC because the ERC is not located on the Mesquite Campus or described on Exhibit B to the First UCC.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 25 OF 34
9512139 v1 (73669.00002.000)

132. The Second and Third UCCs do not perfect any liens or security interests in the ERC because neither UCC sufficiently identifies the ERC as UMB's collateral.

133. The Fourth UCC does not perfect any liens or security interests in the ERC because the collateral covered by the Fourth UCC is limited to the Debtors' rights to payment from Medicare and Medicaid.

134. Therefore, the Financing Statements do not perfect UMB's Prepetition Liens in the ERC.

135. Additionally, UMB's Prepetition Liens are not perfected in the ERC because the Debtors did not acquire any rights to receive ERC payments until after the Petition Date.

136. The Debtors applied for an ERC for the last three quarters of 2020 and all four quarters of 2021. The Debtors still do not know whether their ERC application will be approved for the other two quarters of 2020 or any quarters of 2021.

137. The Debtors have no rights to an ERC payment until their application has been approved.

138. The Debtors did not receive notice that any portion of their ERC application had been approved until June 27, 2022, after the Petition Date, when they received notice that the application had been approved for one fiscal quarter of 2020.

139. Therefore, UMB's Prepetition Liens are not perfected in any ERC payments received by the Debtors or the Debtors' right to receive such payments.

140. The Committee requests that the Court enter judgment that (a) the Debtors' rights to receive ERC payments, and any proceeds thereof, are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Debtors' rights to receive ERC payments, and any proceeds thereof, pursuant to section 544 of the Bankruptcy Code.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY
OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 26 OF 34
9512139 v1 (73669.00002.000)

## COUNT VII
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Accounts Receivable)

141. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

142. The First UCC does not perfect any liens or security interests in any of the Debtors' accounts receivable, even those generated from the Mesquite Campus, because the accounts receivables are not assets that are located on the Mesquite Campus, and/or because the accounts receivable are not described on Exhibit B to the First UCC.

143. The Second and Third UCCs do not perfect any liens or security interests in any of the Debtors' accounts receivables because neither UCC sufficiently identifies any accounts receivable as UMB's collateral.

144. Therefore, all of the Debtors' accounts receivable other than Medicare or Medicaid receivables (the **"Other Receivables"**) are free and clear of UMB's asserted Prepetition Liens.

145. The Committee requests that the Court enter judgment that (a) the Debtors' Other Receivables are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to all of the Debtors' Other Receivables pursuant to section 544 of the Bankruptcy Code.

## COUNT VIII
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Vehicles)

146. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

147. Texas law requires that liens be recorded on a vehicle's certificate of title in order to perfect a lien or security interest in the vehicle, unless the vehicle is held as inventory by a person in the business of selling vehicles.

148. The Debtors are not in the business of selling motor vehicles and do not hold any of the Vehicles as inventory.

149. UMB's Prepetition Liens are not recorded on the certificates of title for any of the Vehicles.

150. UMB is not in possession of any of the certificates of title for any of the Vehicles.

151. Therefore, UMB's Prepetition Liens are not perfected in any of the Vehicles.

152. The Committee requests that the Court enter judgment that (a) the Vehicles are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Vehicles pursuant to section 544 of the Bankruptcy Code.

## COUNT IX
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Mineral Interests)

153. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

### *i.   Tarrant County Minerals*

154. The Tarrant Mineral Leases are Permitted Encumbrances under the terms of the Master Indenture and Deed of Trust.

155. By the terms of the Master Indenture, the Debtors' rights and interests in the Tarrant County Minerals and the Tarrant Mineral Leases, including the right to receive royalty payments, are superior to UMB's asserted Prepetition Liens.

156. The Debtors' rights and interests in the Tarrant County Minerals and the Tarrant Mineral Leases are not part of UMB's Prepetition Collateral because the estates' rights and interests therein are superior to UMB's Prepetition Liens.

**ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.**    **PAGE 28 OF 34**

9512139 v1 (73669.00002.000)

*ii.* ***Other Minerals***

157. On information and belief, after due inquiry, neither the Master Indenture, nor the Deed of Trust, nor any other evidence of UMB's Prepetition Liens against the Other Mineral are recorded in the real property records for any of the counties in which the Other Mineral are located.

158. The Financing Statements are ineffective to perfect UMB's Prepetition Liens in the Other Minerals because the Other Minerals constitute real property of the Debtors.

159. Therefore, UMB's Prepetition Liens are not perfected in the Other Mineral Interests.

160. The Committee requests that the Court enter judgment that (a) the Mineral Interests are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to the Mineral Interests pursuant to section 544 of the Bankruptcy Code.

## <u>COUNT X</u>
### (Objection to Extent, Validity, and Priority of Prepetition Liens on Other Intangible Assets)

161. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

162. The First UCC does not perfect any liens or security interests in the Other Intangible Assets because the Other Intangible Assets are not located on the Mesquite Campus, and/or because such assets are not described on Exhibit B to the First UCC.

163. The Second and Third UCCs do not perfect any liens or security interests in the Other Intangible Assets because neither UCC sufficiently identifies the Other Intangible Assets as UMB's collateral.

164. The Fourth UCC does not perfect any liens or security interests in the Other Intangible Assets because the Other Intangible Assets do not consist of the Debtors' rights to payment from Medicare and Medicaid.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 29 OF 34
9512139 v1 (73669.00002.000)

165.     Therefore, the Financing Statements are insufficient to perfect UMB's Prepetition Liens in the Other Intangible Assets.

166.     The Committee requests that the Court enter judgment that (a) each of the Other Intangible Assets is not encumbered by UMB's Prepetition Liens and is not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to each of the Other Intangible Assets pursuant to section 544 of the Bankruptcy Code.

### COUNT XI
**(Objection to Extent, Validity, and Priority of Prepetition Liens
on Other Tangible Assets)**

167.     The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

168.     The First UCC does not perfect any liens or security interests in any of the Other Tangible Assets that are not located on the Mesquite Campus and described on Exhibit B to the First UCC.

169.     The Second and Third UCCs do not perfect any liens or security interests in the Other Tangible Assets because neither UCC sufficiently identifies the Other Tangible Assets as UMB's collateral.

170.     The Fourth UCC does not perfect any liens or security interests in the Other Tangible Assets because the Fourth UCC is limited to the Debtors' intangible rights to payment from Medicare and Medicaid.

171.     The Committee requests that the Court enter judgment that (a) the Other Tangible Assets are not encumbered by UMB's Prepetition Liens and are not part of the Prepetition Collateral, and (b) avoiding UMB's asserted Prepetition Liens as to each of the Other Tangible Assets pursuant to section 544 of the Bankruptcy Code.

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY
OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 30 OF 34
9512139 v1 (73669.00002.000)

## COUNT XII
### (Avoidance of Liens on Unencumbered Property and Recovery of Proceeds on Account Thereof – 11 U.S.C. §§ 544, 549, and 550)

172. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

### i. Avoidance of Liens – 11 U.S.C. § 544(a)

173. The Committee, with authority to Challenge the Prepetition Liens, claims, and rights asserted by UMB against the Debtors' property, holds the rights and powers of (i) a judicial lien creditor, (ii) a creditor that extends credit on the date of bankruptcy and obtains a writ of execution that is returned unsatisfied, or (iii) a bonafide purchaser of real property of the Debtors, all as more fully set forth in section 544(a) of the Bankruptcy Code.

174. As of the Petition Date, UMB's Prepetition Liens were not perfected against any of the Debtors' assets as set forth in Counts I through XI of this Complaint (such assets, collectively, the **"Challenged Assets"**).

175. The Committee's rights and powers under section 544(a) of the Bankruptcy Code, as exercised on behalf of the Debtors' estates, are superior to UMB's asserted Prepetition Liens and enable the avoidance of UMB's asserted Prepetition Liens as to each of the Challenged Assets.

176. Pursuant to section 544(a) of the Bankruptcy Code, the Committee requests that the Court enter an order enforcing the estates' strong-arm powers and avoiding UMB's asserted Prepetition Liens with respect each of the Challenged Assets.

### ii. Avoidance of Post-Petition Transfers – 11 U.S.C. § 549(a)

177. The Committee, with authority to Challenge the Prepetition Liens, claims, and rights asserted by UMB against the Debtors' property on behalf of the estates, may avoid any post-petition transfers of the estates' property that are not authorized under the Bankruptcy Code, as further set forth in section 549(a) of the Bankruptcy Code.

178.    To the extent that UMB's asserted Prepetition Liens on any of the Challenged Assets are avoided, any post-petition payments to UMB as proceeds of such Challenged Assets are avoidable under section 549(a), including any payments of Sale proceeds.

179.    The Committee requests that the Court enter an order avoiding any transfers of money or property from the Debtors or their estates to UMB on account of any liens or security interests that were invalid and/or unperfected as of the Petition Date, or that are otherwise avoided as requested in this Complaint, pursuant to section 549(a) of the Bankruptcy Code.

### *iii.    Recovery of Avoided Liens and Transfers – 11 U.S.C. § 550(a)*

180.    Under section 550(a) of the Bankruptcy Code, the Debtors' estates are entitled to recover any transfers to UMB, or the value thereof, which are avoided under Chapter 5 of the Bankruptcy Code, including the conveyance of invalid or unperfected liens or security interests.

181.    The Committee requests that the Court enter judgment that the estates shall recover all money or property transferred to UMB on account of any liens, security interests, or claims that are avoided or disallowed, as requested in this Complaint, pursuant to section 550(a) of the Bankruptcy Code.

### <u>COUNT XIII</u>
### (Objection to Allowance of UMB's Prepetition Claim)

182.    The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

183.    UMB is not entitled to a secured claim on account of any of the Debtors' assets in which its Prepetition Liens were not valid and properly perfected as of the Petition Date.

184.    The secured portion of UMB's Prepetition Claim must be limited to the value of the assets in which UMB's Prepetition Liens were valid and properly perfected as of the Petition Date, pursuant to section 506(a) of the Bankruptcy Code.

185. The Committee requests that the Court enter an order disallowing UMB's secured claim to the extent that such secured claim exceeds the value of the Debtors' assets in which UMB's Prepetition Liens were valid and properly perfected as of the Petition, as determined by the Court in accordance with the relief requested herein.

### COUNT XIV
### (Request for Attorneys' Fees, Expenses, and Costs of Court)

186. The Committee incorporates by reference the allegations in each of the foregoing and ensuing paragraphs with the same force and effect as if fully set forth herein.

187. The Committee requests that it be awarded all attorneys' fees, expenses, and costs of court incurred in connection with this adversary proceeding to the fullest extent allowable under applicable law.

### VII.
### RESERVATION

188. The Committee reserves (i) the right to supplement or amend its claims and causes of action against UMB for any reason, (ii) the right to introduce additional facts or arguments supporting its claims and causes of action against UMB, whether raised in this Complaint or in any supplements or amendments hereto, and (iii) all of its other rights, claims, and defenses under applicable law and/or any Orders entered by the Court in the Debtors' bankruptcy cases. Nothing contained in or omitted from this Complaint shall be deemed or construed as a waiver of any of the Committee's rights or any of the Committee's or the estate's claims or causes of action against UMB.

### VIII.
### PRAYER FOR RELIEF

WHEREFORE, the Committee respectfully prays for judgment against UMB as follows:

(a)    Determining the extent, validity, perfection, enforceability, and priority of UMB's asserted Prepetition Liens with respect to all of the alleged Prepetition Collateral, pursuant to Bankruptcy Rule 7001(2);

ORIGINAL COMPLAINT TO DETERMINE EXTENT, PRIORITY, AND VALIDITY
OF LIENS AND OBJECTION TO CLAIM OF UMB BANK, N.A.

PAGE 33 OF 34
9512139 v1 (73669.00002.000)

(b)     Declaring that UMB's asserted Prepetition Liens do not encumber any of the Debtors' assets subject to the Committee's Challenges set forth herein in Counts I through XI, pursuant to Bankruptcy Rule 7001(9) and the Declaratory Judgment Act;

(c)     Avoiding UMB's asserted Prepetition Liens as to all of the Debtors' assets subject to the Committee's Challenges set forth herein in Counts I through XI, pursuant to applicable law, including section 544(a) of the Bankruptcy Code;

(d)     Avoiding any post-petition transfers of money of money or property from the Debtors' estates to UMB on account of any avoided Prepetition Liens, pursuant to section 549(a) of the Bankruptcy Code;

(e)     Ordering that the Debtors' estates shall recover from UMB all transfers, or the value thereof, that are avoided as requested in this Complaint, including (without limitation) post-petition transfers to UMB on account of any avoided Prepetition Liens, pursuant to applicable law, including section 550(a) of the Bankruptcy Code;

(f)     Disallowing UMB's secured claim to the extent that such claim exceeds the value of the Debtors' assets in which UMB's asserted Prepetition Liens were valid and properly perfected as of the Petition Date, pursuant to section 506(a) of the Bankruptcy Code;

(g)     Awarding the Committee all attorneys' fees, expenses, and costs of court incurred in connection with this proceeding; and

(h)     Granting the Committee such other and further relief to which it is justly entitled.


DATED: August 19, 2022                          Respectfully submitted,

                                                **KANE RUSSELL COLEMAN LOGAN PC**

                                                By:_____ */s/ Joseph M. Coleman*_____
                                                      **Joseph M. Coleman**
                                                      State Bar No. 04566100
                                                      **S. Kyle Woodard**
                                                      State Bar No. 24102661
                                                Bank of America Plaza
                                                901 Main Street, Suite 5200
                                                Dallas, Texas 75202
                                                Tel.: (214) 777-4200
                                                Fax: (214) 777-4299
                                                Email: jcoleman@krcl.com
                                                Email: kwoodard@krcl.com


                                                ***Proposed Attorneys for the Official
                                                Committee of Unsecured Creditors***